UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| First International Bank & Trust, as Trustee of the Clarence and E. Mae Helling Family Trust,<br><br>Plaintiff,<br><br>vs.<br><br>Oasis Petroleum North America LLC,<br><br>Defendant. | Civil No. 1:18-cv-00067-DLH-CRH<br><br>**Reply in Support of Motion to Dismiss Exemplary Damages Claim under Rule 12(b)(6) or Rule 56** |

The Court should either dismiss or enter summary judgment against the newly added exemplary damages claim. First International supports the claim with allegations and evidence that suggest, at most, past instances of mere negligence, none of which were replicated in the incident at issue.[1] On the record before the Court, it is undisputed that the accidental release at the Helling Trust 11-15H well was the first of its kind in Oasis's history, resulting from hydraulic fracturing impacts to a frac-protected well. Because First International's "other acts" evidence shows mere negligence at most, and because it lacks any meaningful nexus to the circumstances that caused the incident at issue, it cannot be used to support an exemplary damages claim. As a matter of law, Oasis cannot be punished in this case for unrelated accidents involving non-parties.

---

[1] As a threshold matter, First International asserts that the dispositive issues raised in Oasis's principal brief have already been determined by the magistrate judge in this case. If this is so, then it only validates Oasis's objection to the magistrate judge's exercise of jurisdiction over a dispositive motion in derogation of Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1)(A). *See* Dkt. No. 56.

**A.     First International relies on irrelevant evidence to support its claim for exemplary damages.**

To support its exemplary damages claim, First International cites irrelevant evidence and then mischaracterizes or overstates the substance of that evidence. Counsel for Oasis acknowledged at a status conference that First International has filed "voluminous" evidence, but he did not agree that the evidence actually supports the claim. Oasis has debunked First International's characterizations of the evidence on two occasions now: (1) in its initial response in opposition to First International's Motion to Amend (Dkt. No. 31) and (2) in the principal brief supporting this motion (Dkt. No. 67). In response, First International cites no new evidence and persists in taking the same liberties in characterizing the same evidence. Rather than rehash the evidence point by point, Oasis refers the Court to the following index with cross-references to the sections of Oasis's principal brief that explain each category of evidence on which First International relies.

| **Evidence put forth by First International** | **Oasis's brief** |
|---|---|
| Oasis's history of other spills | Docket No. 67, pp. 18–20 |
| Alleged "pattern of noncompliance" in DEQ e-mail concerning air emissions forms | Docket No. 67, pp. 20–21 |
| NDIC statement regarding "serious threat of pollution or injury to public health and safety" | Docket No. 67, pp. 21–22 |
| SEC Form 10-K statement on financial impacts of environmental regulations | Docket No. 67, p. 22 |
| NDIC and DEQ enforcement actions relating to other spills | Docket No. 67, pp. 11–14, 23–24 |
| DEQ suit and settlement relating to air emissions | Docket No. 67, pp. 24–26 |

B.     **Evidence of mere negligence cannot support an award of exemplary damages.**

"Mere negligence does not authorize an award of exemplary damages." *McLean v. Kirby Co., a Div. of Scott Fetzer Co.*, 490 N.W.2d 229, 246 (N.D. 1992). First International seems unaware of this black letter law. The bank opens its brief by trumpeting the fact that Oasis admitted liability on a count of negligence, and asserts, "It cannot be disputed that Oasis's conduct, and negligence, caused the Helling Trust blowout." Dkt. No 76, at 4–5 (emphasis added). First International then asserts that Oasis has a history of spills "caused by Oasis's negligence and equipment failures, which supports the Helling Trust's claim for punitive damages." Dkt. No 76, at 5 (emphasis added). It proceeds to discuss evidence that supposedly shows Oasis's "pattern of negligence" and "repetitive negligence." Dkt. No 76, at 7–8. Lacking is any cogent explanation of how the well-pled allegations or evidence on file with the Court could establish actual malice or oppression, as opposed to mere negligence. Rather, First International lamely asserts that the jury should be allowed to award exemplary damages based on the totality of the circumstances—circumstances that supposedly establish negligence by Oasis. Contrary to First International's assertion, allegations or evidence of mere negligence cannot support an exemplary damages claim under North Dakota law.

C.     **First International cannot seek exemplary damages to punish Oasis for past conduct relating to non-parties.**

First International's responsive brief makes clear that it seeks to punish Oasis not primarily for the incident at issue but for Oasis's past, unrelated accidents. The United States Supreme Court, however, has prohibited this tactic. "[D]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of a reprehensibility analysis . . . ." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003). Why? Because "[p]unishment on these bases creates the

3

possibility of multiple punitive damages awards for the same conduct; for in the usual case nonparties are not bound by the judgment some other plaintiff obtains." *Id.* (citing *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 593 (1996) (Breyer, J. concurring)).  First International thus misses the mark when it claims "a jury can infer that Oasis's repeat conduct of over 400 spills, coupled with its focus on financial gain over any mention of fixing systemic equipment failures, and its continued equipment failures after being sued multiple times, was despicable and oppressive so as to deserve punitive damages."  Dkt. No. 76, at 28.  First International wonders aloud, "How else would a Court punish a defendant for similar, previous egregious conduct . . . ." *Id.* at 33.  The resounding answer is that a court may not do so.  Exemplary damages may punish only the conduct underlying the plaintiff's claims in the case.  What First International misses is that, before a jury may be invited to punish Oasis for being a recidivist <u>as to the incident at issue</u>, the court "must ensure the conduct in question <u>replicates</u> the prior transgressions."  *State Farm*, 538 U.S. at 423 (emphasis added).  First International seeks to punish Oasis for hundreds of prior incidents involving nonparties, without making any serious effort to show that the incident at issue "replicates the prior transgressions." *Id.*  It may not do so.

**D.     First International's reliance on Oasis's purported history of "equipment failures" is superficial and fails to demonstrate the incident at issue replicates prior transgressions.**

First International repeatedly asserts that Oasis has a history of "equipment failure," as a supposed mark of similarity between the incident at issue and the other incidents upon which its claim relies.  Of course, the bank hazards no explanation of how any equipment failure on the well at issue replicated a prior equipment failure.

To establish the supposed pattern of equipment failure, First International primarily relies on post-spill NDIC filings that identify the causes of spills.  In some cases following a hydrocarbon release, the North Dakota Industrial Commission ("NDIC") requires the well or pipeline operator

4

to file a "Follow-up Spill Report" form. This form has a field titled "Root Cause of Release." *See generally* Dkt. No. 25-6. "Equipment Failure/Malfunction" is a common entry in that field. By way of example, here is an excerpt of one such form at first page of Docket No. 25-6:

| Type of Incident | Root Cause of Release | Date Clean up Activities Concluded |
|---|---|---|
| Pipeline Leak | Equipment Failure/Malfunction | June 20, 2016 |

What is the import of the "Root Cause" field on these forms? According to the NDIC: "The root cause is a <u>real general statement</u> on the reports that come to us. So to say it's reoccurring because that says the same thing on it, I think would be a misinterpretation of the incident itself." Dkt. No. 25-15, Hicks NDIC 30(b)(6) Depo., p. 51:10–14 (emphasis added). What does the term "Equipment Failure" mean? According to the NDIC, it merely means that "[S]ome incident happened usually <u>beyond the control of the operator</u> because of some failure that occurred rather than an incident that happened because of some miscue of the operator or contractor on location." *Id.* at p. 22:12–17 (emphasis added).

As a "real general statement," the Root Cause stated in a Follow-up Spill Report does nothing to establish that one incident replicated, or even resembled, another. However, the form does include a field requiring a narrative description of the cause. The field is labeled "Describe Cause of Release or Other Type of Incidents, Root Causes of Release, Land Uses, and Released Substances." By way of example, refer again to the form on the first page of Docket No. 25-6.

| Describe Cause of Release or Fire and Other Type of Incidents, Root Causes of Release, Land Uses, and Released Substances |
|---|
| After digging the bell hole, the crew left for the night. During the night the weight of the valve caused a fuse to break allowing the tank to drain into the bell hole. |

First International does not deign to direct the Court to a single form with a description that replicates what occurred on the Helling Trust Property. Nor could it, as the undisputed record before the Court reveals that the incident on the Helling Trust Property was the first loss of well control in Oasis's history resulting from hydraulic fracturing impacts to a frac-protected well. Dkt.

5

No. 32, Anderson Aff. ¶ 9.  That it was a first-of-its-kind accident for Oasis renders it factually impossible to establish that "the conduct in question replicates the prior transgressions," as required if the plaintiff seeks to support an exemplary damages claim with evidence of other acts. *State Farm*, 538 U.S. at 423.  In fact, the NDIC's own review of the incident at issue concluded it was not the same or substantially similar to any prior violations subject to consent agreements with the NDIC.  Dkt. No. 25-15, Hicks NDIC 30(b)(6) Depo., pp. 74:12–75:5.

Moreover, instances of "equipment failure" may not even establish negligence or fault on the part of the operator, insofar as they are "usually beyond the control of the operator." *See* Dkt. No. 25-15, Hicks NDIC 30(b)(6) Depo., p. 51:10–14.  Without more, the existence of past incidents involving equipment failure does nothing to establish an operator subjected a person to cruel and unjust hardship in conscious disregard of that person's rights (oppression) or acted with an intent with ill will or wrongful motive to harass, annoy, or injure another person (actual malice).  Even if equipment failure were suggestive of negligence, "[m]ere negligence does not authorize an award of exemplary damages." *McLean v. Kirby Co., a Div. of Scott Fetzer Co.*, 490 N.W.2d 229, 246 (N.D. 1992).

In sum, even assuming for the sake of argument that Oasis has a history of spills generally attributed to "equipment failure," such a fact does not come close to supporting an exemplary damages claim.

**E.     The case law relied upon by First International sets forth allegations and standards that it cannot meet in this case.**

The case law First International cites to support its argument crystallizes the bank's failure to pursue a cognizable claim for punitive damages.  In *Atkinson v McLaughlin*, punitive damages were allowed to go forth where the defendant "orchestrated a negative public relations blitz against Atkinson . . . expended tremendous resources to publicize the accusations of child sexual abuse

leveled against Atkinson as well as Atkinson's connection to others portrayed as morally and financially corrupt." No. 1:03-CV-091, 2007 WL 557024, at *9 (D.N.D. Feb. 15, 2007). In *Mosely v. Alpha Oil and Gas Services, Inc.*, the defendant allegedly fired Mosley for whistleblowing regarding a lack of safety equipment and forced Mosely to work without safety equipment, despite knowledge that this equipment was required to reasonably protect him. 962 F. Supp. 2d 1090, 1105 (D.N.D. 2013). If anything, these cases stand for the proposition that malicious and oppressive conduct must be directed at a plaintiff so as to knowingly or intentionally cause harm. *See id*. (citing *Ingalls v. Paul Revere Life Ins. Group*, 1997 ND 43, ¶¶ 43–45, 561 N.W.2d 273 ("[T]he term 'malice' encompasses the intentional violation of a legal duty in conscious disregard of a plaintiff's rights and the term 'oppression' encompasses acting intentionally to cause another hardship.")). No such allegation exists here, and the record lacks any evidence that the incident at the Helling Trust Property was anything but an accident.

Also inapposite are the cited cases in which prior conduct or knowledge provided a basis to claim punitive damages. In *Olson v. Ford*, a claim for punitive damages was allowed to proceed where there was evidence that Ford knew of a design defect in its Ford Explorer and failed to "design out" or mitigate this defective condition in subsequent models, thereby causing injury to Olson. No. A4-04-102, 2005 WL 3271945, at *2 (D.N.D. Nov. 29, 2005). Here, the record lacks any allegation or evidence that Oasis knew of and ignored a defect with the Helling Trust 11-15H well. First International also cites *Holt v. Quality Egg, LLC*, wherein a claim for punitive damages was allowed to proceed because the claim was based on an alleged "disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow." 777 F. Supp. 2d 1160, 1173 (N.D. Iowa 2011). The known and obvious risk in *Holt* was a series of persistent salmonella outbreaks at a single manufacturing facility over the course of two years that went

7

unremedied.  *Id*.  The court allowed a punitive damages claim because the claim for compensatory damages arose out of another salmonella outbreak at the same facility.  *Id.*  Here, by contrast, it is undisputed that the incident at issue was the first of its kind in Oasis's history. Dkt. No. 32, Anderson Aff. ¶ 9.  And the record lacks any evidence that Oasis disregarded a known or obvious risk of highly probable harm.  Similarly, in *McClure v. Walgreen Co.*, a punitive damages claim rested on a single pharmacy's failure to properly fill prescriptions on 34 prior occasions.  613 N.W.2d 225, 233–34 (Iowa 2000).  Perhaps *McClure* would be persuasive if Oasis had made the same mistake 34 times in the past.  The fact remains, however, that the incident at issue was the first loss of well control in Oasis's history resulting from hydraulic fracturing impacts to a frac-protected well.  Dkt. No. 32, Anderson Aff. ¶ 9.

      Finally, notably absent from First International's response brief is any attempt to distinguish *Holdgrafer v. Unocal Corp.*, on which Oasis relied in its opening brief.  160 Cal. App. 4th 907 (2008).  That case applied *State Farm's* proscription against admitting evidence of dissimilar conduct to support a claim of punitive damages in the context of an oil spill.  Oasis's principal brief spells out the background and rationale of the case.  Dkt. No. 67, at 16–17.  For the purposes of this reply brief, it bears repeating what should be obvious at this point: one accidental release cannot be said to "replicate" another simply by labelling both "spills."  As in *Holdgrafer*, the evidence of other incidents put forward by First International to support its exemplary damages claim is "too dissimilar to satisfy due process."  160 Cal. App. 4th at 932.

      The record lacks evidence or even allegations that could support an exemplary damages claim under the standards and case law cited by the parties.

## **CONCLUSION**

For the reasons stated above and in its principal brief, Oasis respectfully requests the Court dismiss First International's claim for exemplary damages under Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure.

Dated this 6th day of May, 2020.

    CROWLEY FLECK PLLP
    Attorneys for Defendant Oasis Petroleum North America LLC
    100 West Broadway, Suite 250
    P.O. Box 2798
    Bismarck, ND   58502-2798
    701-223-6585

    By: */s/ Paul J. Forster*
    JOHN W. MORRISON (#03502)
    jmorrison@crowleyfleck.com
    PAUL J. FORSTER (#07398)
    pforster@crowleyfleck.com
    BENJAMIN J. SAND (#07981)
    bsand@crowleyfleck.com